In the Matter of the Application of ROBERT G. FUREY, as Administrator, etc., of MARY McKAY, Deceased, Petitioner, for a Mandamus Order against MARK GRAVES, President of the State Tax Commission, and Others, Respondents.

Supreme Court, Albany County, September 7, 1933.

*Walter J. Egan* [*Francis H. Warland* and *Leo Brady* of counsel], for the petitioner.

*John J. Bennett, Jr., Attorney-General* [*Seth T. Cole* of counsel], for the respondents.

SCHENCK, J. This is an application for a mandamus order directing the Tax Commission to return to the administrator of the estate of Mary McKay the sum of $225, paid on account of a transfer tax, in advance of the order fixing the tax.

The decedent died in November, 1916, a resident of the State of New York. The transfer tax was estimated at $225, and that amount was paid to the State Comptroller in May, 1917, and temporary receipts were issued.

It has been common practice for many years in order to procure a discount or to prevent the running of interest or penalties in connection with a transfer by will or intestacy, to roughly estimate the amount of the tax and pay the same to the State. After the adjustment of the transfer tax, any excess was returned to the estate.

The transfer tax on this estate was not adjusted until 1932,

although the authorities demanded that a transfer tax proceeding be had. The main question argued in this case is whether or not the petitioner is barred by the Statute of Limitations which is to be applied as between the State and its creditors in the same manner as between private citizens.

Section 6 of article 7 of the New York State Constitution reads as follows: " Claims barred by statute of limitations. § 6. Neither the Legislature, canal board, nor any person or persons acting in behalf of the State, shall audit, allow, or pay any claim which, as between citizens of the State, would be barred by lapse of time. This provision shall not be construed to repeal any statute fixing the time within which claims shall be presented or allowed, nor shall it extend to any claims duly presented within the time allowed by law, and prosecuted with due diligence from the time of such presentment. But if the claimant shall be under legal disability, the claim may be presented within two years after such disability is removed."

The payment was made to the State about fifteen years ago. It is claimed by the State that as between individuals the six-year Statute of Limitations would apply, the cause of action being on implied or quasi contract for money had and received. (*Stuart* v. *Grattan*, 217 App. Div. 336; *Matter of Hoople*, 179 N. Y. 308, 314; Civ. Prac. Act, § 48.)

Petitioner claims, among other things, that payment of the $225 to the State was a deposit, and that until a demand was made for its return, a cause of action did not accrue, and that the statute did not begin to run until the demand which was made shortly before this application.

The section relating to refunds of transfer taxes erroneously paid has been frequently amended.

Section 6 of chapter 399 of the Laws of 1892, on the revision of the Tax Law in 1896, became section 225 of chapter 908 of the Laws of 1896. These two sections, which were identical, and the amendments by chapter 284 of the Laws of 1897 and chapter 382 of the Laws of 1900, were discussed in *Matter of Hoople* (179 N. Y. 308).

Section 225 of the 1896 revision and the two amendments are as follows:

" § 225. Refund of tax erroneously paid. If any debts shall be proven against the estate of a decedent after the payment of any legacy or distributive share thereof, from which any such tax has been deducted or upon which it has been paid by the person entitled to such legacy or distributive share and such person is required to refund the amount of such debts or any part thereof, an equitable proportion of the tax shall be repaid to him by the executor, administrator or trustee, if the tax has not been paid to the county

treasurer, comptroller of the city of New York, or to the state treasurer, or by such treasurer, comptroller or state treasurer, if such tax has been paid to him. When any amount of said tax shall have been paid erroneously into the state treasury, it shall be lawful for the comptroller of this state, upon satisfactory proof presented to him of the facts, to require the amount of such erroneous or illegal payment to be refunded to the executor, administrator, trustee, person or persons who have paid any such tax in error, from the treasurer; or the said comptroller may, by order, direct and allow the treasurer of any county or the comptroller of the city of New York to refund the amount of any illegal or erroneous payment of such tax out of the funds in his hands or custody, to the credit of such taxes, and credit himself with the same in his quarterly account rendered to the comptroller of this state under this article; provided, however, that all applications for such refunding of erroneous taxes shall be made within five years from the payment thereof." (Laws of 1896, chap. 908.)

" § 225. Refund of tax erroneously paid. If any debts shall be proven against the estate of a decedent after the payment of any legacy or distributive share thereof, from which any such tax has been deducted or upon which it has been paid by the person entitled to such legacy or distributive share, and such person is required by order of the surrogate having jurisdiction, on notice to the state comptroller, to refund the amount of such debts or any part thereof, an equitable proportion of the tax shall be repaid to him by the executor, administrator or trustee, if the tax has not been paid to the county treasurer, or comptroller of the city of New York, or if such tax has been paid to such treasurer or comptroller of the city of New York, he shall refund out of the funds in his hands or custody to the credit of such taxes such equitable proportion of the tax, and credit himself with the same in his quarterly account rendered to the comptroller of the state under this act. If after the payment of any tax in pursuance of an order fixing such tax, made by the surrogate having jurisdiction, such order be modified or reversed, on due notice to the comptroller of the state, the state comptroller shall, by order, direct and allow the treasurer of the county, or the comptroller of the city of New York, to refund to the executor, administrator, trustee, person or persons, by whom such tax had been paid, the amount of any moneys paid or deposited on account of such tax in excess of the amount of the tax fixed by the order modified or reversed, out of the funds in his hands or custody, to the credit of such taxes, and to credit himself with the same in his quarterly account rendered to the comptroller of the state under this act; but no application for such refund shall be made after one year from such

reversal or modification, and the comptroller of the state, shall deduct from the fees allowed by this article to the comptroller of the city of New York or the county treasurer the amount theretofore allowed him upon such overpayment. Where it shall be proved to the satisfaction of the surrogate who has assessed the tax upon the transfer of property under this article that deductions for debts were allowed upon the appraisal, since proved to have been erroneously allowed, it shall be lawful for such surrogate to enter an order assessing the tax upon the amount wrongfully or erroneously deducted." (Laws of 1897, chap. 284.)

§ 225. Refund of tax erroneously paid. If any debts shall be proven against the estate of a decedent after the payment of any legacy or distributive share thereof, from which any such tax has been deducted or upon which it has been paid by the person entitled to such legacy or distributive share, and such person is required by order of the surrogate having jurisdiction, on notice to the state comptroller, to refund the amount of such debts or any part thereof, an equitable proportion of the tax shall be repaid to him by the executor, administrator or trustee, if the tax has not been paid to the county treasurer, or comptroller of the city of New York, or if such tax has been paid to such treasurer or comptroller of the city of New York, he shall refund out of the funds in his hands or custody to the credit of such taxes such equitable proportion of the tax, and credit himself with the same in his quarterly account rendered to the comptroller of the state under this act. If after the payment of any tax in pursuance of an order fixing such tax, made by the surrogate having jurisdiction, such order be modified or reversed within two years from and after the date of entry of the order fixing the tax, on due notice to the comptroller of the state, the state comptroller shall, by order, direct and allow the treasurer of the county, or the comptroller of the city of New York, to refund to the executor, administrator, trustee, person or persons, by whom such tax has been paid, the amount of any moneys paid or deposited on account of such tax in excess of the amount of the tax fixed by the order modified or reversed, out of the funds in his hands or custody, to the credit of such taxes, and to credit himself with the same in his quarterly account rendered to the comptroller of the state under this act; but no application for such refund shall be made after one year from such reversal or modification, and the comptroller of the state, shall deduct from the fees allowed by this article to the comptroller of the city of New York or the county treasurer the amount theretofore allowed him upon such overpayment. Where it shall be proved to the satisfaction of the surrogate who has assessed the tax upon the transfer of property under this article that deductions for debts

were allowed upon the appraisal, since proved to have been erroneously allowed, it shall be lawful for such surrogate to enter an order assessing the tax upon the amount wrongfully or erroneously deducted." (Laws of 1900, chap. 382.)

In *Matter of Hoople* (179 N. Y. 308) it appeared that a transfer tax was assessed on the estate of William G. Hoople, deceased, in 1895. Included in the property transferred were certain United States bonds, which, under the ruling in *Matter of Whiting* (150 N. Y. 27), were not subject to transfer tax. In October, 1903, eight years after the payment and assessment of the tax, the surrogate of Queens county vacated his former decree and ordered a refund of $660. The Comptroller appealed.

In the *Hoople* case the transfer tax was paid in 1895. At that time the statute provided that application for refunding erroneous taxes must be made within five years after payment. The five-year period under the statute expired in 1900. The application for refund was made in 1903, so that under Laws of 1892, chapter 399, section 6, and Laws of 1896, chapter 908, section 225, a refund could not have been had if section 225 continued to operate, and the Court of Appeals so held.

However, in 1897, and again in 1900, before the application in the *Hoople* case was made, section 225 was amended.

Chapter 284 of the Laws of 1897 made material changes in section 225.

The amendment of 1897 provided that where a tax was paid in pursuance of an order fixing the tax, and the order was subsequently modified or reversed, a refund might be made of moneys paid or deposited on account of said tax, but no such refund might be made after one year from the reversal or modification.

Chapter 382 of the Laws of 1900 made a further change. It was provided that a refund might be made of the payment of a tax in pursuance of an order fixing such tax, if such order was modified or reversed within two years after the fixing of the tax, and the application was made within one year after the reversal or modification.

The Appellate Division ruled in the *Hoople Case* (93 App. Div. 486) that the 1892 and 1896 statutes and the 1897 amendment did not apply, as they had been repealed. In connection with the 1892 and 1896 statutes, the five-year period had not elapsed before repeal, and the 1897 statute would not have prevented a refund in any event as the application for refund was made within the year limitation of that amendment. The 1900 amendment, however, would have prevented a recovery, but the court held that it was a statute of limitation, and that, as the Legislature had not indicated that it was to have a retroactive effect, it did not apply to the case in question. The surrogate's order was affirmed.

The Court of Appeals reversed the Special Term and Appellate Division. The court held that the statutes in question were not statutes of limitation, but conditions which must have been complied with in order to authorize a refund. The court also held that even if the statutes in question had a prospective operation only, the petitioner would be relegated to the 1892 statute, with its five-year limitation. However, the court held that if the Appellate Division was correct as to the 1900 amendment, the former statutes having been repealed, the provision of the Constitution applied, and that the six-year Statute of Limitation would prevent a refund.

Following the *Hoople* case, section 225 of the Tax Law was amended by Laws of 1901, chapter 173; Laws of 1905, chapter 368; Laws of 1907, chapter 323; Laws of 1911, chapter 308, and Laws of 1921, chapter 476.

In 1925 transfer tax laws were amended with respect to non-residents by chapter 143 of the Laws of 1925. This amendment added article 10-A to the Tax Law, which article imposed upon non-residents a flat rate upon the gross amount of their tangible property within the State. Section 248-f of article 10-A provided that whenever the Tax Commission shall determine that any tax collected under the provisions of that article has been erroneously collected, the amount so determined should be refunded, without interest, out of the funds in the custody of the Comptroller to the credit of such taxes. Article 10-A was declared unconstitutional in *Smith* v. *Loughman* (245 N. Y. 486). This was in 1927.

In 1928 the Legislature, by chapter 330 of the Laws of 1928, re-enacted article 10-A of the 1925 act, with amendments designed to remove constitutional objections as to discriminatory rates. By the 1928 statute, article 10-A, as re-enacted and amended, was made retroactive to July 1, 1925, and the tax thereunder was declared to be in lieu and instead of the tax imposed upon transfers by non-residents under article 10-A enacted in 1925.

The Court of Appeals has held that the retroactive taxing feature is invalid, but the procedural provisions are valid, and that the taxing features of the 1925 act were revived. (*Matter of Nash* v. *Lynch*, 226 App. Div. 421; affd., 253 N. Y. 564; *Matter of Caulfield*, 136 Misc. 685.)

Section 248-f of article 10-A of the act of 1928 contained a provision similar to that in the 1925 act, as follows: " Whenever the tax commission shall determine that any tax collected under the provisions of this article has been erroneously collected, the amount so determined shall be refunded, without interest, out of the funds in the custody of the comptroller to the credit of such taxes."

In 1930, in *Farmers Loan Co.* v. *Minnesota* (280 U. S. 204), the United States Supreme Court declared taxation of bonds of non-

residents unconstitutional, and in 1931, in *First National Bank* v. *Maine* (284 U. S. 312), that court likewise held invalid similar taxation of stocks.

In 1930 the Legislature added a new article 10-C to the Tax Law, which went into effect September 1, 1930, and which superseded article 10-A with respect to persons dying after it had become effective. (Laws of 1930, chap. 710.)

In 1931, by chapter 178 of the Laws of 1931, section 248-f of article 10-A of the Tax Law, which superseded the unconstitutional article 10-A, was amended to read as follows: " Whenever the tax commission shall determine that any tax collected under the provisions of this article has been erroneously collected, the amount so determined shall be refunded, without interest, out of the funds in the custody of the comptroller to the credit of such taxes, but no such refund shall be made unless application therefor is made within one year from the date of the assessment of the tax and the giving of notice thereof as provided by this article."

From this review of the refunding provisions of the Tax Law, it appears that since 1897, a period of thirty-six years, there has been no express limitation upon the time within which a refund of a transfer tax might be had, providing there was no order fixing or assessing the tax. All limitations since 1897 begin to run from the order fixing the tax.

Argument has been made that although there is no express provision contemplating a payment of transfer tax prior to the making of the order fixing the tax, still the long-continued usage of the taxing authorities in receiving payment of the transfer tax, which accrues upon the death of a testator or intestate, where the transfer is by will or intestate law (Tax Law, § 222) and the repayment, presumably under section 225 of the Tax Law, has the force of law. Also, that the Statute of Limitations, if applicable, did not begin to run until demand for a refund.

In the first place the payment on account of transfer tax was in no sense a deposit upon which a demand was necessary to start the statute running. Section 15 of the Civil Practice Act provides: " Where a right exists, but a demand is necessary to entitle a person to maintain an action, the time within which the action must be commenced must be computed from the time when the right to make the demand is complete except in one of the following cases:

" 1. Where the right grows out of the receipt or detention of money or property by an agent, trustee, attorney, or other person acting in a fiduciary capacity, the time must be computed from the time when the person having the right to make the demand has actual knowledge of the facts upon which that right depends.

" 2. Where there was a deposit of money not to be repaid at a fixed time but only upon a special demand, or a delivery of personal property not to be returned specifically or in kind at a fixed time or upon a fixed contingency, the time must be computed from the demand."

That there was no deposit is apparent when the circumstances of the payment are considered. Transfer taxes accrue upon the death of the testator or intestate. The payment prior to the fixing of the tax is not made on the understanding that the money will be held as a mere deposit to satisfy the tax when it is accurately ascertained. On the contrary, the purpose of the delivery of the money to the State is contemplated as a payment, discharging the lien of the tax which accrued upon the death of the testator or intestate, and for the further purpose of stopping the running of interest and penalties. The basic idea of a deposit of money is safe-keeping, whether the identical money or its equivalent is to be returned to the depositor.

So, even though a demand is a part of the cause of action to recover an erroneous assessment, when the right to make the demand accrues, the statute begins to run. (*Reid* v. *Board of Supervisors of Albany County*, 128 N. Y. 364.)

In the case of an unconstitutional statute imposing a tax, such as that imposed upon non-residents on a transfer of intangibles, a right to refund, where such a right exists, accrues at once, even though a demand is essential, in the absence of a statute imposing other conditions. An unconstitutional law is inoperative for any purpose and it makes no difference when the court declares it unconstitutional. (*Reid* v. *Board of Supervisors of Albany County*, 128 N. Y. 364; *Traktman* v. *City of New York*, 241 id. 221, 227.)

In the case at bar, however, even though a demand is essential, there is no right to a refund without the performance of a further condition, namely, the assessment of the tax.

May the taxpayer postpone indefinitely his application to assess the tax?

The rule is that where a right of action depends upon some act to be performed by a party preliminary to commencing suit, and he is under no restraint or disability, he cannot suspend indefinitely the running of the Statute of Limitations, by delaying the performance of the preliminary act. This would put it within the power of a party to defeat the purpose of the statute. Where a party has it in his power to make his cause of action complete, it is his duty to do so within a reasonable time, and that is all he will be allowed. (*Bauserman* v. *Blunt*, 147 U. S. 647; *Reid* v. *Board of Supervisors of Albany County*, 128 N. Y. 364.)

Therefore, the taxpayer must apply to have the tax assessed within a reasonable time and, thereupon, the right to make a demand accrues. The statute then begins to run.

What would be a reasonable time depends upon the circumstances, including established usages and customs. Ordinarily two years in the case of fixing transfer taxes is fully adequate according to custom.

In connection with some estates, however, possibly the time might be extended to several years, where the estate becomes involved in litigation or other difficulties are encountered. In the case at bar, for example, the estate was a small one, in so far as it appears, and no doubt within two years, at the most, a proceeding should have been commenced to determine the transfer tax, if petitioner ever intended to make a claim for the return of the money.

Eight years, therefore, should be the limitation governing a case like the present one, where the statute imposing the tax is void. That time had expired before the application to fix the tax here.

The cases heretofore cited, which deal with the Statute of Limitations in connection with tax refunds (*Reid* v. *Board of Supervisors of Albany County* and *Matter of Hoople, supra*), involve an unconstitutional statute imposing the tax.

As stated above, the Statute of Limitations is applied between the State and the taxpayer as it would be applied in a similar case between private persons.

So, where payment is made of a tax under an unconstitutional statute, the situation is analogous to a payment between citizens under a mutual mistake where the consideration wholly fails. To recover such a payment, an action for money had and received would lie, and a demand would be essential. (*Sharkey* v. *Mansfield,* 90 N. Y. 227.)

When the right to make the demand accrues, the Statute of Limitations begins to run. If the demand may be made immediately, the statute permitting a refund, without imposing any conditions, then the statute begins to run at once. If, however, a condition is imposed which the taxpayer must perform, then, in accordance with general principles, applicable to the Statute of Limitations (*Bauserman* v. *Blunt,* 147 U. S. 647), the right to make the demand accrues after a reasonable time within which the taxpayer should perform the condition. (*Matter of Hoople, supra; Reid* v. *Board of Supervisors of Albany County, supra.*)

The same result is attained where the statute imposing the tax is valid, but there is an overpayment, although the method of approach may be somewhat different.

Where a valid tax is imposed but the amount is uncertain and an

advance payment is made, there is no payment under a mutual mistake. The taxpayer deliberately pays an amount which will leave a margin covering contingencies and intends an overpayment. He relies upon the State to refund the excess.

The effect of an advance overpayment in such circumstances must be determined in order to apply the Statute of Limitations as if the transaction were between private citizens. If, instead of the State and the taxpayer being parties to the transaction, an obligation rested upon a private individual to pay a sum of money, and such payment was necessary to release a lien upon his property, the amount of the lien not being definitely ascertained at the time, but could be ascertained by him in the future, and such individual made an excess payment for the purpose of discharging the lien, under either an express or implied promise to have the excess refunded, we have a situation similar to that existing between the taxpayer and the State. In such circumstances, the inquiry would be made as to the understanding of the parties and a contract to return the excess would be implied according to the circumstances of the situation, in the absence of an express agreement.

The contract under such circumstances would be an actual one, as distinguished from a mere quasi-contract arising out of mutual mistake.

Such a contract would be founded on a sufficient consideration. If there was an excess payment, there was, in effect, a borrowing and a lending of the excess. The payment of the excess was a good consideration for the agreement, express or implied, to repay the same when the tax was determined. (*Eno* v. *Woodworth*, 4 N. Y. 249.)

If, however, there was a lack of consideration and a want of mutuality, then an action for money had and received would lie on the theory of quasi-contract, upon an unjust enrichment. (*Eno* v. *Woodworth*, 4 N. Y. 249.) Thus, the parties would be in the same situation, as far as the right of action is concerned, as they would be under an unconstitutional statute as outlined above.

Assuming, then, that as between individuals in a situation analogous to that of the State and taxpayers, there would be a contract to return the excess payment, how would the Statute of Limitations then apply?

Since the taxpayer has it within his power to have the amount of the tax fixed, he must make an application to have the tax assessed within a reasonable time. Even though a demand is essential, the right to make the demand accrues when the tax is fixed. The situation is, therefore, the same as outlined above in connection with an invalid tax.

The application for mandamus is denied, with costs.