In the Matter of the Application of JENNIE E. DEE, as Executrix, etc., of JOHN DEE, Deceased, Appellant, for an Order Pursuant to Article 78 of the Civil Practice Act, against THE STATE TAX COMMISSION and Others, Respondents, Directing the Refund of $773.07 Deposited by Said Executrix in Excess of the Transfer Tax on the Estate of Said Deceased, as Fixed by the Final Taxing Order.*

Third Department, July 11, 1939.

* Revg. 169 Misc. 635.

*Schwarte, Slade, Harrington & Goldsmith* [*John A. Slade* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General* [*Mortimer M. Kassell, Special Assistant Attorney-General* of counsel; *Paul Newman* with him on the brief], for the respondents.

HEFFERNAN, J. This is an appeal by the executrix of the last will and testament of John Dee from an order of the Albany Special Term of the Supreme Court denying her motion for an order directing the refund of $773.07 deposited by her as an advance payment of any inheritance tax that might be levied in excess of the transfer tax on the estate of the decedent as finally fixed by an order of the court.

John Dee died a resident of Saratoga county on May 22, 1926, leaving a last will and testament which was admitted to probate by the surrogate of that county on August 9, 1926, at which time letters testamentary were issued to petitioner. On November 12, 1926, the executrix deposited with the treasurer of Saratoga county $1,300 " for transfer (inheritance) tax paid in advance of the entry of an order fixing same." For some reason not disclosed in the record no proceeding was instituted to fix the amount of the transfer tax imposed by article 10 of the Tax Law upon transfers made by decedent until February 1, 1938. On February 24, 1938, an order was made by the surrogate of Saratoga county fixing the tax to which the estate was found liable at $526.93. This order constituted a final determination of the tax liability of the estate. Thereafter the attorneys for petitioner made demands upon the State Tax Commission and the State Comptroller for a refund of the excess deposited amounting to $773.07. The State Comptroller refused to comply with the demand on April 20, 1938 and the State Tax Commission made a like refusal on June 14, 1938. Thereafter and on June 21, 1938, petitioner applied to the Supreme Court

under the provisions of article 78 of the Civil Practice Act for an order directing respondents to refund to her the sum heretofore mentioned. The respondents opposed this application solely on the ground that " any right to refund which the petitioner herein may have had has been barred by virtue of the operation of the six-year Statute of Limitations and respondents are prohibited from making any refund by reason of the provisions of section 6 of article VII of the Constitution of the State of New York." That contention was sustained by the court at Special Term on the authority of *Matter of Furey* v. *Graves* (148 Misc. 785; affd., 241 App. Div. 897; affd., 266 N. Y. 415).

That case is pressed upon us by respondents as a controlling authority. In the *Furey* case testator died in November, 1916; deposit of the estimated tax which the court held was a payment and not a deposit was made in May, 1917 and the taxing order was entered in 1932. The six-year Statute of Limitations was applied against an application for the refund of the overpayment on the ground that payment of the refund was prohibited by the Constitution of the State of New York.

Section 19 of article 3 of the Constitution of the State of New York, in effect on January 1, 1939, provides, in part, as follows: " No claim against the State shall be audited, allowed or paid which, as between citizens of the State, would be barred by lapse of time." The above section is the same as section 6 of article 7, as it read prior to January 1, 1939, without change, except a technical change of phraseology.

The *Furey* case was decided at Special Term on September 7, 1933. By chapter 434 of the Laws of 1934 there was added to section 225 of the Tax Law, effective May 8, 1934, a paragraph, the pertinent provisions of which are: " Notwithstanding any of the foregoing provisions of this section, or any other provision or law, * * * where it appears that a tax was paid before the entry of a taxing order and such order shows that the amount of tax due is less than the amount so paid, the Tax Commission, with the approval of the Comptroller, shall refund to the persons entitled thereto the amount so paid in excess of the amount of tax fixed by the taxing order, out of funds in the custody of the Comptroller to the credit of such taxes, *provided application for such refund be filed with the Tax Commission within one year from the entry of such taxing order.*" This amendment was expressly made retroactive by section 2 of the act. It is to be noted that the amendment went into effect before the Statute of Limitations as applied in the *Furey* case had run against petitioner. Prior to the amendment to section 225 of the Tax Law by chapter 434 of the Laws of 1934,

there was no express authority in the Tax Law for the deposit of money to cover a prospective inheritance or transfer tax in advance of an order fixing the tax. It is true that such deposit or payments had become a recognized custom, however, and overpayments were refunded almost as a matter of course. There were express provisions in section 225 of the Tax Law for the refund of tax erroneously paid but no provision either for payment or deposit in advance of an order fixing the tax or for a refund of the excess. The amendment to this section which became effective on May 8, 1934, gave statutory recognition to an advance payment and expressly provided for a refund in case of overpayment. In case of overpayment the only requirement is that the application for the refund should be made within one year after the entry of the taxing order. In this case the application for the refund was made within a year after the entry of such taxing order. It seems to us that by the amendment to section 225 of the Tax Law by chapter 434 of the Laws of 1934 the Legislature intended to abrogate the rule adopted in the *Furey* case. That view is reinforced by the provision in the amendment regulating refunds under certain conditions not applicable here "in a case where a payment of tax was made prior to the twelfth day of March, nineteen hundred twenty-eight, before the entry of a taxing order," which is more than six years prior to the amendment itself.

The argument is made that the provision referred to only applies when the order is entered within six years. The answer to that is that the statute itself contains no such limitation. The provision would seem to clearly indicate the legislative intention to make the entry of the order the date from which the limitation as to refunds is to run and to make the time limited by the section itself for the application the only effective limitation. The right to a refund cannot be determined until the amount of the tax is determined. Both are a part of the taxing process. The deposit is clearly a part of the proceeding to enforce the collection of the tax. The estimated payment of $1,300 which was made in this case was neither final nor binding on either party and could not be until the surrogate made an order definitely fixing the amount of the tax which the executrix should pay. It would be a harsh construction of this statute to hold that the Statute of Limitations commences to run before it is finally and definitely ascertained by the court whether or not any tax is payable and if so the amount. It is a familiar principle that a Statute of -Limitations should not be applied to cases not clearly within its provisions; neither should it be extended by construction.

The constitutional provision invoked does not prohibit the construction of the 1934 amendment here urged. The amendment

only fixes the conditions of the deposit and refund. Such incidents either as between citizens or between the State and its citizens are entirely open to legislative control. The 1934 amendment to section 225 of the Tax Law in effect pledges the State to return the overpayment under the conditions now before the court and the constitutional provision at best ambiguous and doubtful in its meaning (*Oswego & Syracuse R. R. Co.* v. *State*, 226 N. Y. 351, 362) was never intended to take away the right of the Legislature to regulate such conditions. It is beyond question that as to such limitations " ' the time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run will generally depend on the sound discretion of the Legislature.' " (*Rexford* v. *Knight*, 11 N. Y. 308.)

Not only may the Legislature as a general rule establish a new limitation where none existed before and make it apply to a cause of action against which there was no such statute in existence when it was created, but it may also change an existing statute and shorten the periods of limitation, provided a reasonable time is allowed for actions to be brought. The Legislature also has power to extend the period of an existing Statute of Limitations, and lengthen the time in which suit may be brought in regard to contracts and causes of action already existing. (17 R. C. L. 672, 673.)

In this case it is conceded that the State holds $773.07 in excess of the amount to which it is entitled under the taxing order of the court. The retention of this sum by the State seems to us to be unconscionable. Although the defense of the Statute of Limitations is a legitimate one, it seems to us that there is an element of dishonor involved in its assertion in the case before us. We appreciate the fact that long dormant claims have often more of cruelty than of justice in them and in such cases the defense of the Statute of Limitations is not only proper but meritorious.

The application of simple rules of common honesty and fair dealing between the State and one of its citizens forbids us to aid the former in retaining money which clearly is the property of the latter. To give judicial sanction to such a result stuns the moral sense and offends the dictates of natural justice.

The order appealed from should be reversed, with fifty dollars costs and disbursements, and the motion granted, with fifty dollars costs.

HILL, P. J., and BLISS, J., concur; CRAPSER, J., dissents and votes to affirm on the authority of *Matter of Furey* v. *Graves* (148 Misc. 785; affd., 241 App. Div. 897; affd., 266 N. Y. 415).

Order reversed on the law, with fifty dollars costs and disbursements, and motion granted, with fifty dollars costs