In the Matter of the Application of FRANCES WENDELL STONE, as Sole Beneficiary of the Remainder of the Trust Created by Paragraphs " Sixth " and " Seventh " of the Last Will and Testament of GORDON WENDELL, Deceased, Petitioner, Appellant, for a Mandamus Order against MARK GRAVES, President of the State Tax Commission, and Others, Commissioners, Constituting the State Tax Commission, and MORRIS S. TREMAINE, Comptroller of the State of New York, Respondents.

Third Department, January 10, 1940.

*Satterlee & Canfield [H. Herbert Romanoff of counsel; Edward H. Fallows with him on the brief], for the appellant.*

*John J. Bennett, Jr., Attorney-General [Mortimer M. Kassell, Special Assistant Attorney-General, of counsel; Samuel Lorvan with him on the brief], for the respondents.*

HILL, P. J. Petitioner appeals from an order denying her application to have the State Tax Commission and Comptroller directed to refund $2,621.68, the difference between the amount paid as an inheritance tax by the estate of her father under a *pro forma* taxing order made in 1911, and the amount finally fixed and determined as the correct tax by a final order made on March 8, 1938.

The testator died on January 31, 1910. He bequeathed the remainder of his estate in trust, the income to be paid to his widow during her life, and upon her death the corpus remaining to be divided among his children then living, or their descendants, and if no child or descendant of a child survived the widow the remainder was to pass to his brothers or their descendants. The *pro forma* order taxed the remainder at five per cent, which would have been the rate had it passed to his brothers or their descendants. When the widow died on June 19, 1929, she was survived by the petitioner, the only child of the testator. Under the statute in force in 1911 (Tax Law, § 221) the remainder passing to a child was subject to a one per cent tax. Application for a modification of the *pro forma* order was made in February, 1938, and it was determined that the correct amount was $655.42. Demand for refund was made immediately.

Section 230 of the Tax Law (as amd. by Laws of 1911, chap. 800) provided in substance that on the happening of a contingency whereby property was transferred to a person taxable at a rate less than the rate imposed and paid, the estate was entitled to a return of the excess.

Section 225 of the Tax Law, as amended by chapter 434 of the Laws of 1934, reads in part: " Where it appears that a tax was paid before the entry of a taxing order and such order shows that the amount of tax due is less than the amount so paid, the Tax Commission, with the approval of the Comptroller, shall refund to the persons entitled thereto the amount so paid in excess of the amount of tax fixed by the taxing order, * * *, provided application for such refund be filed with the Tax Commission within one year from the entry of such taxing order." Application herein was made

immediately after the entry of the taxing order. The amendment also indicates a legislative intent that the provisions should be retroactive.

It has been suggested, and the chronology may indicate, that chapter 434 of the Laws of 1934 was enacted to liberalize the harsh and somewhat unconscionable doctrine of *Matter of Furey* v. *Graves* (148 Misc. 785; 241 App. Div. 897; 266 N. Y. 415). A repayment and refund was there denied upon the ground that the Statute of Limitations had run and the claim outlawed. The amendment became a law on May 8, 1934, and by its terms took effect at once. The *Furey* case was decided at Special Term on September 7, 1933, was affirmed in the Appellate Division in May and in the Court of Appeals in December, 1934. There were no opinions except in the Special Term. The theory there is that recovery of the overpayment was governed by subdivision 1 of section 15 of the Civil Practice Act; that the claim could only have been prosecuted successfully during the six years following a reasonable time in which to make a demand after claimant had actual knowledge of the facts. Subdivision 2 of the same section, which applies to the deposit of money " not to be paid at a fixed time but only upon a special demand," was held not to apply. There the time fixed by the Statute of Limitations begins to run only after a demand. It was further suggested in the *Furey* opinion that two years would ordinarily be a reasonable period within which to make a demand. Applying those rules to this case would have required petitioner to obtain the modifying order, make demand for repayment and commence an action or proceeding to recover within eight years after June 19, 1929. The demand was not made until February, 1938, nearly nine years after the death of the life beneficiary.

The State urges that the 1934 amendment is unconstitutional if it grants the relief sought by the petitioner herein because the Constitution in effect prior to January 1, 1939 (Art. 7, § 6), provided: " Neither the Legislature, Canal Board, nor any person or persons acting in behalf of the State, shall audit, allow, or pay any claim which, as between citizens of the State, would be barred by lapse of time." A comparable provision is found in the new Constitution (Art. 3, § 19): " No claim against the State shall be audited, allowed or paid which, as between citizens of the State, would be barred by lapse of time." The reasoning is cogent if petitioner's right to a refund is governed by subdivision 1 of section 15 of the Civil Practice Act, and if the constitutional provision is construed to mean that petitioner must prosecute her claim within the same time that a private citizen would be required to prosecute a claim against another for money had and received.

The 1934 amendment only required the State to practice common honesty. The taxing statute in effect in 1911, when the payment was made, promised to return any excess. The amendment makes effective that promise. A private citizen may waive the Statute of Limitations by a new promise. The Legislature has always been permitted to legalize a claim which, although technically invalid, is morally and equitably binding. If the matter were being considered *de novo*, and we are not advised upon what theory the Court of Appeals decided the *Furey* case, the excess payment might be regarded as a deposit with the Statute of Limitations beginning to run only after demand. (Civ. Prac. Act, § 15, subd. 2.) Effect should be given to the clear legislative intent that these just claims be paid.

The order appealed from should be reversed on the law and facts, with costs, and the order asked granted, with costs.

BLISS and FOSTER, JJ., concur; CRAPSER, J., dissents and votes to affirm.

Order reversed on the law and facts, with ten dollars costs, and order granted, with ten dollars costs.