OPINION OF THE COURT
Howard G. Lane, J.
The court, sua sponte, recalls its memorandum decision dated February 7, 2012 and issues this memorandum decision in its place.
In this CPLR article 78 proceeding petitioner New York Medical & Diagnostic Center, Inc. seeks a judgment declaring respondents’ interpretation of Public Health Law § 2807-j null and void to the extent that respondents relied upon a six-year statute of limitations in order to preclude petitioner from obtaining a full refund of overpayments it made to the Department of Health; annulling respondents’ determination to the extent that they withheld and continue to withhold outstanding overpayments made by petitioner; and directing respondents to release all outstanding funds due and owing to petitioner in connection with all overpayments which occurred on and after January 1999.
Petitioner New York Medical & Diagnostic Center, Inc. (NYMDC) is a licensed diagnostic and treatment center subject to surcharges on patient service revenues pursuant to Public Health Law § 2807-j. Petitioner alleges that from the period of January 1999 through March 2009, it made overpayments to the New York State Department of Health (DOH), totaling $479,510.
Nooshin Sadigh as president of NYMDC notified the DOH, in a letter dated March 5, 2004, that it had discovered that it had overpaid the Public Goods Pool for calendar year 2003, and requested an offset against future submissions. These overpayments totaled $77,413. The DOH, in a response date April 21, 2004, stated that the amount of the claimed overpayment, $77,413, was incorrect based upon the following data:
“• Your letter indicated that $10,859.00 was paid for the April 1, 2003 report, resulting in an overpayment of $6,984.00. The actual payment we received on your check number 7202 was $12,977.00, which creates an overpayment of $9,102.00 for the April report.
“• Your letter also indicated that $9,703.00 was paid for the June 1, 2003 report, resulting in an overpay *558 ment of $3,434.00. The actual payment we received on your check number 6948 was $11,598.00, which creates an overpayment of $5,329.00 for the June report.
“• Prior to the reports received on March 10, 2004, the Office of Pool Administration did not receive Public Goods Pool reports or payments for Pool Years 2003 and 2002 for the report months of July through September 2003. Therefore, the amounts listed in your letter cannot be included in the overpayment amount.
“The actual overpayment credited by adjusting the January through June 2003 reports for Pool Year 2003 is $56,311.00. The total amount of credits applied to the reports for July through December 2003, Pool Year 2003 is $36,905.00. The remaining credit balance to be applied to the future Public Goods reports (after December 2003) is $19,406.00.”
The DOH in its response also stated that its records indicated that numerous pool reports were delinquent for pool years 2003 and 2004, and set forth a list of the missing reports. The DOH requested that NYMDC submit the missing reports as soon as possible and directed that it take a credit against future reports until the remaining credit balance of the $19,406 was reached.
Nooshin Sadigh, as president of NYMDC, in a letter dated December 19, 2007, and addressed to the DOH, referred to a notice from the DOH dated December 10, 2007 regarding New York public goods payments for January 2007 through July 2007 and amounts due; provided the DOH with the public pool reports for January 2007 through July 2007; stated that the facility did not have any accessible cash for that period and therefore did not owe any amounts to the pool; and objected to unspecified amounts that had been calculated by the DOH.
Nooshin Sadigh, as president of NYMDC, in a letter dated January 15, 2009, and addressed to “Adel Compton, Division of Health Care Financing,” provided the DOH with a summary recalculating the January 1999 to December 2008 monthly Public Goods Pool reports, including minimal co-pays and other assessable cash receipts. NYMDC asserted that an overpayment of $498,288 was paid for said period, after offsetting the amounts due the pool, and requested a refund of the overpayment.
Mr. Sadigh, as president of NYMDC, in a letter dated March 18, 2009 and addressed to Ms. Compton provided the DOH with *559 a summary recalculating the January 1999 to February 2009 monthly Public Goods Pool reports, including minimal co-pays and other assessable cash receipts. NYMDC asserted that an overpayment of $479,510 was paid for said period, after offsetting the amounts due the pool, and requested a refund of the overpayment.
Anthony Abbate, a CPA with Abbate DeMarinis, LLf] sent a letter to Ms. Compton dated April 22, 2009, on behalf of NYMDC, regarding the request for a refund for the period of January 1999 through 2009 in the amount of $479,510. NYMDC’s accountant referred to prior communications regarding the issue of overpayments and a refund; attached the prior correspondence dated March 5, 2004 and April 21, 2004, as well as other correspondence; and stated that “[a]ccordingly, since this process began at least in March of 2004 (if not prior) it would seem that my client is within the 6-year statute of limitation and therefore should be refunded all of the overpayment retroactive to January 1999 as shown on the schedule previously submitted.”
Ms. Compton sent an e-mail dated April 24, 2009 to William Johnson at Abbate DeMarinis, which stated as follows:
“Attached is an analysis of New York Medical & Diagnostic’s Pubic Goods Pool Reports received from 1/1/99 to current, showing the original paid reports, the due date of each, dated received, and amended, revised reports received. To explain our computations:
“• Penalty and interest has been assessed on late filed reports from the due date of the report to the date received.
“• A 7 day grace period from the date received has been used in this calculation.
“• Penalty and interest assessed is based on the amended (reduced) reports received.
“Based upon the 6 year statute to request a refund, If the request for refund was received in 2008, we can include the overpaid reports commencing December 2001 and forward. This would result in an overpayment of $123,387.71.
“Based on the attachment below we did not receive the refund request from New York Medical & Diagnostic until January 15, 2009. Therefore, we cannot include the overpaid public goods pool *560 reports from December 2001-November 2002. This results in a balance due of $41,581.09.
“If you have any documentation requesting the overpayment/refund for New York Medical prior to January 15, 2009, please forward it to me either via email or mail, so that we can proceed with the processing.”
Mr. Johnson, in a reply e-mail, stated that
“I have looked through the office and I am unable to find a copy of the letter dating back to November 2008. The PDF attachment that I am sending you is a copy of the January 15, 2009 letter and a copy of the updated pool summary through February 2009. I understand that you will not be able to go back to December 2001. Please let me know if you have any other questions regarding this client.”
Anthony Abbate, in a letter dated May 6, 2009 and addressed to Ms. Compton, stated that
“[pjursuant to our telephone conversations and your conversations with our client Jacob Sadigh of New York Medical and Diagnostic Center, we are appealing to you to reconsider your position on the statute of limitation issue regarding the earlier year over-payments to N.Y.S. Public Goods Pool for the following reasons:
“1) There was in fact correspondence that dates back to March 5, 2004 indicating that there was an overpayment problem. The only reason that it was not resolved at that time was most likely due to miscommunication between the N.Y.S.D.O.H. staff and out client as to the magnitude of the overpayment.
“2) Subsequent letters, emails and phone calls logged from 2004 through the present time clearly indicate that our client was trying to resolve this overpayment issue regardless of the amount.
“3) In our conversations on the telephone the other day (as well as previous conversations with my staff and I) you indicated that you had notations of prior contact with my client and/or my staff in 2008.
“There is no question that our client overpaid the pools by $479,510. I believe in past conversations you do not deny that they overpaid the aforementioned amount. It is inconceivable that you will deny *561 my client a refund based upon a technicality. We believe that the statute of limitations does not apply due to the fact that there was correspondence and contact with your office and/or the N.Y.S. Pool Administration dealing with overpayment issues dating back to 2004 and prior.”
Mr. Abbate requested that the DOH reconsider its determination and process NYMDC’s refund request.
Mr. Abbate, in a letter dated June 15, 2009, and addressed to Ms. Compton, stated that “[p]ursuant of your request this letter will verify that we indeed requested a refund of overpaid public goods pool contribution by letter dated November 25, 2008 to which you have indicated you received on or about that date.”
The DOH agreed to treat NYMDC’s request to adjust its reports as having been made in 2008, based upon its records which demonstrated that an oral request had been made in 2008. The DOH granted refunds for the period of December 2001 onward, but did not grant a refund for the period of January 1, 1999 through November 2001.
Counsel for NYMDC, in a letter dated October 26, 2010, stated that the overpayment occurred during the period of January 1999 through June 2003, and asserted that although the DOH had acknowledged the entire overpayment, it had only refunded a portion in the sum of $138,505.90. Counsel stated that the DOH had not refunded the balance of $341,004.10, as it claimed a six-year statute of limitations prevented it from refunding said amount. Counsel stated that Public Health Law § 2807-j (8) (c) explicitly deals with surcharge overpayments and that subdivision (8) contains no limitation on the time a provider of services may seek a refund for overpayments made to the DOH. Counsel stated that the only statute of limitations is set forth in section 2807-j (8-a) (a) and that this provision pertains to the DOH’s ability to audit the payments and proofs submitted by a provider. Counsel further argued that the statutory language and the legislative history supported NYMDC’s position that a refund of the entire overpayment was required.
DOH’s general counsel, in a letter dated November 23, 2010 and addressed to NYMDC’s counsel stated, in pertinent part, that
“as you acknowledge in your letter, PHL § 2807-j was subsequently amended in 2005 by the addition of a new subdivision 8-a. That new subdivision does *562 contain, in paragraph (a), a provision setting a six year time limit on changes to surcharge payments ‘after which such payments shall be deemed final and not subject to further adjustment and reconciliation.’ In your letter you argue that this provision applies only to adjustments arising from Department audits. However, there is nothing in the language to limit its reach to audits and the Department has consistently interpreted it as applying equally to all potential payment adjustments, thus allowing the Department to finalize and ‘close out’ old pool years. The fact that PHL § 2807-j (8) (c) has not been amended simply reflects the fact the new language in subdivision 8-a made such an amendment superfluous.”
NYMDC commenced the within article 78 proceeding on February 15, 2011 and alleges that the DOH’s determination was arbitrary and capricious, erroneous as a matter of law, and an abuse of discretion. Petitioner asserts that contrary to respondents’ interpretation of the statute, Public Health Law § 2807-j (8) which governs overpayments does not include any time limit on a health care provider’s right to a refund of an overpayment to the Public Goods Pool. It is alleged that the six-year period of limitations applied by the DOH is specifically meant to apply to DOH’s ability to audit payments and reports submitted by a health care provider. Petitioner asserts that although DOH has six years to perform these audits and at the end of the six-year period all payments are considered final, the Public Health Law does not contain a corresponding obligation that requires health care providers to seek repayments of overpayments concurrently. It is asserted that NYMDC properly requested a refund of the overpayment in full and complete compliance with Public Health Law § 2807-j (8) (c), and that respondents’ refusal to refund that overpayment blatantly denies it the statutory remedy expressly granted to providers to overpayment refunds. It is asserted that respondents’ interpretation of the Public Health Law is not supported by the plain meaning of the statute, and is contrary to its legislative history. Petitioner seeks a judgment declaring respondents’ interpretation of Public Health Law § 2807-j null and void to the extent that they relied upon a nonexistent six-year statute of limitations to preclude NYMDC from obtaining a full refund of overpayments made to DOH; annulling respondents’ determination and resulting action to the extent that they have withheld outstanding overpayments made *563 by NYMDC; and directing respondents to immediately release all outstanding funds due and owing to NYMDC in connection with overpayments which occurred on and after January 1999.
Respondents, in opposition, assert that petitioner is time-barred from claiming refunds for any time period prior to November 2001, based upon the six-year statute of limitations set forth in Public Health Law § 2807-j (8-a) (a). Respondents assert that section 2807-j (8-a) (a) clearly provides that Public Goods Pool payments are final after six years, and that even if said statute requires interpretation, petitioner’s claim is devoid of merit, and the DOH’s interpretation is rational and consistent with the underlying basis for the statute. It is asserted that petitioner’s interpretation of the statute would leave open the possibility of a refund request forever, prevent any pool year from being finally accounted for, and defeat the goal of achieving a final number for pool revenues for each year.
Petitioner, in reply, asserts that the respondents’ interpretation of Public Health Law § 2807-j (8-a) (a), to the extent it is claimed the limitations period promotes finality in the Public Goods Pool, is undermined by the DOH’s own audit practices, and the existence of amnesty programs which permit providers to make delinquent payments under certain conditions.
It is well established that judicial review of an administrative agency’s interpretation of a statute is limited to whether the interpretation is arbitrary and capricious or irrational (see Matter of Lippman v Public Empl. Relations Bd., 263 AD2d 891, 894-895 [1999]).
At issue here is whether the six-year period of limitations set forth in Public Health Law § 2807-j (8-a) (a) is only applicable to audits conducted by the Commissioner of the DOH, or whether it is equally applicable to requests by designated providers for a refund of an overpayment to the Public Goods Pool. Therefore, this court is “faced with the interpretation of statutes and pure questions of law and no deference is accorded the agency’s determination” (Matter of Madison-Oneida Bd. of Coop. Educ. Servs. v Mills, 4 NY3d 51, 59 [2004]; see Lorillard Tobacco Co. v Roth, 99 NY2d 316, 322 [2003]; Seittelman v Sabol, 91 NY2d 618 [1998]; Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459 [1980]; Matter of Astoria Gas Turbine Power, LLC v Tax Commn. of City of NY., 14 AD3d 553 [2005]).
In matters of statutory and regulatory interpretation, “legislative intent is the great and controlling principle, and the proper judicial function is to discern and apply the will of the [enac *564 tors]” (Matter of ATM One v Landaverde, 2 NY3d 472, 477 [2004]; see Mowczan v Bacon, 92 NY2d 281, 285 [1998]; Patrolmen’s Benevolent Assn, of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976]; see Longines-Wittnauer Watch Co. v Barnes & Reinecke, 15 NY2d 443, 453, [1965], cert denied sub nom. Estwing Mfg. Co. v Singer, 382 US 905 [1965]; see Town of Huntington v County of Suffolk, 79 AD3d 207 [2010]; East Acupuncture, P.C. v Allstate Ins., Co., 61 AD3d 202 [2009]).
“Legislative intent may be discerned from the face of a statute, but an apparent lack of ambiguity is rarely, if ever, conclusive. Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history” (Matter of Sutka v Conners, 73 NY2d 395, 403 [1989] [citation omitted]; see Matter of ATM One v Landaverde, 2 NY3d at 477 [2004]).
Since the statutory text is the clearest indicator of legislative intent, “the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof” (Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 583 [1998]; see Matter of Jansen Ct. Homeowners Assn, v City of New York, 17 AD3d 588, 589 [2005]).
In an effort to improve the accessibility and affordability of health care throughout the state the Legislature enacted the Health Care Reform Act of 1996 (hereinafter HCRA) (Public Health Law § 2807-j, as added by L 1996, ch 639, § 51). The HCRA established “public good” pools, or special revenue accounts, designed to fund “public good” programs for medical services to the indigent. In order to fund these public good pools, HCRA established a surcharge on payments by all payors for inpatient hospital services and certain outpatient health care services rendered by designated health care providers (Public Health Law § 2807-j [1]). The HCRA has been amended several times, and was most recently extended through December 31, 2014.
Public Health Law § 2807-j (8) was enacted as part of the original HCRA in 1996. This section pertains to payments to the DOH by designated providers of medical services. Paragraph (a) provides, under certain circumstances not relevant here, for the payment of interest to the DOH where there has been an underpayment of the monthly amount due. Paragraph (b) provides for the payment of a penalty, under certain circum *565 stances not relevant here, where there has been underpayment of the monthly amount paid. Paragraph (c) provides that
£<[o]verpayment by or on behalf of a designated provider of services of a payment shall be applied to any other payment due from the designated provider of services pursuant to this section, or, if no payment is due, at the election of the designated provider of services shall be applied to future payments or refunded to the designated provider of services. Interest shall be paid on overpayments from the date of overpayment to the date of crediting or refund at the rate determined in accordance with paragraph (a) of this subdivision only if the overpayment was made at the direction of the commissioner. Interest under this paragraph shall not be paid if the amount thereof is less than one dollar.”
Although there have been numerous amendments to Public Health Law § 2807-j since it was first enacted in 1996, subdivision (8) has remained unchanged, and none of the amendments directly addressed overpayments.
Public Health Law § 2807-j (8-a) (a) was enacted in 2005 and amended in 2006 (L 2005, ch 58; L 2006 ch 57), and provides that
“[pjayments and reports submitted or required to be submitted to the commissioner or to the commissioner’s designee pursuant to this section and section twenty-eight hundred seven-s of this article by designated providers of services and by third-party payors which have elected to make payments directly to the commissioner or to the commissioner’s designee in accordance with subdivision five-a of this section, shall be subject to audit by the commissioner for a period of six years following the close of the calendar year in which such payments and reports are due, after which such payments shall be deemed final and not subject to further adjustment or reconciliation, provided, however, that nothing herein shall be construed as precluding the commissioner from pursuing collection of any such payments which are identified as delinquent within such six year period, or which are identified as delinquent as a result of an audit commenced within such six year period, or from conducting an audit of any adjustment or reconciliation made by a designated provider of services or by a third party payor *566 which has elected to make such payments directly to the commissioner or the commissioner’s designee.”
A designated medical provider’s right to recover a credit or a refund of an overpayment is expressly set forth in section 2807-j (8). A plain reading of the overpayment provision clearly demonstrates that it imposes no time limit on a designated provider’s ability to seek a refund or credit of an overpayment made to the DOH. If the Legislature had wished to restrict a designated provider’s right to seek a refund or a credit, it would have been a simple matter to include a statute of limitations, and this subdivision’s lack of any such restriction is powerful evidence that no such limiting gloss was meant to be read into it (see McKinney’s Cons Laws of NY, Book 1, Statutes § 74). The Legislature has amended the HCRA many times since its enactment in 1996 without adopting a statute of limitations for such refunds or credits.
The only statute of limitations applicable to HCRA surcharges is set forth in section 2807-j (8-a) (a). This subdivision was adopted several years after section 2807-j (8) and makes no reference to requests by designated providers for a refund or credit. Section 2807-j (8-a) (a), in unequivocal terms, grants the Commissioner of the DOH the authority to conduct an audit, within a six-year period after the calendar year in which the designated provider submits payments and reports to the DOH. No time limit is placed on the DOH for the completion of an audit. Conversely, if the DOH does not commence an audit within the applicable six-year period, then its right to conduct an audit is foreclosed and it cannot belatedly seek to make “adjustments” or “reconciliations,” and unaudited payments made to the DOH are deemed to be final. This language used here is intended to place a time limit on the DOH’s right to conduct an audit. However, the statute clearly permits the Commissioner to pursue the collection of payments which are either identified as delinquent within said six-year period, or identified as delinquent as a result of an audit commenced within such six-year period. In addition, the Commissioner can conduct an audit where the designated provider has made an adjustment or reconciliation.
The time restraint placed on the DOH for the commencement of an audit with its attendant ability to make adjustments and reconciliations, however, cannot be read as a statute of limitations with respect to the right of a designated provider to seek a *567 refund or credit for an overpayment. The fact that respondents have chosen to read such a statute of limitations into the statute for requests for refunds does not make it so. It is well settled that “a Statute of Limitations should not be applied to cases not clearly within its provisions; neither should it be extended by construction” (Matter of Dee v State Tax Commn., 257 App Div 531, 534 [1939], affd Matter of Dee v State Tax Commn., 282 NY 617 [1940]; Matter of American Can Co. v State Tax Commn., 13 AD2d 175, 178 [1961], appeal dismissed 10 NY2d 1015 [1962], lv denied 11 NY2d 643 [1962]). Had the Legislature intended the period of limitations for audits to apply equally to designated providers who seek a refund or credit, it could have easily done so.
The court therefore finds that respondents’ interpretation of Public Health Law § 2807-j (8-a) (a), to the extent that they imposed a six-year statute of limitations on petitioner’s request for a refund of overpayments, is arbitrary and capricious, and irrational. To the extent that petitioner seeks to recover overpayments paid for the period of January 1, 1999 through November 2001, the matter is remanded to the DOH for further proceedings.